IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Charles Edward McClinton, | ) | Case No. 3:13-cv-0942-MBS-JDA |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Plaintiff, | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| v. | ) | |
| | ) | |
| Walden University, Gregory Hickman, | ) | |
| Joann Regan and William Barkley, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on two motions to dismiss filed by Defendants. [Docs. 38, 39.] Plaintiff is proceeding pro se and brings this action for "conspiracy and racial and age discrimination in education." [Doc. 1 at 5.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in this case and to submit findings and recommendations to the District Court.

## BACKGROUND

Plaintiff Charles McClinton ("Plaintiff") filed his pro se Complaint on April 9, 2013. [Doc. 1.] Though not alleged in his Complaint, in his Response to Defendants' motions, Plaintiff states he is a fifty-seven-year-old African-American male. [Doc. 43 at 1.] He alleges that he was accepted into Defendant Walden University's ("Walden") PhD program for clinical social work and human services in March 2008. [Doc. 1 at 5.] To complete the program, Plaintiff was required to attend four residency programs in Atlanta, write six Knowledge Area Module ("KAM") curriculums, and complete three

1

research classes. [*Id.*] Plaintiff alleges his "problems with the University" began during his second residency period in Atlanta. [*Id.*] During that time, he complained to Defendant Joann Regan ("Regan"), one of his professors, that she was not grading his assignments or reporting his progress to the director of the department in a timely fashion. [*Id.*] Plaintiff has completed four of his required KAM curriculums but has been working on his fifth for more than a year, "because [Defendant William Barkley ("Barkley")] wants to dismiss me from the University. He has continuously placed me in classes to belittle my intelligence." [*Id.* at 5-6.]

Plaintiff makes five allegations. First, he claims that Barkley and Defendant Gregory Hickman ("Hickman") have "conspired to intentionally make sure [Plaintiff does] not pass their classes." [*Id.* at 6, ¶ 1.] Plaintiff alleges that he did not know how to use the University's technology for uploading his assignments and Hickman failed him because his assignments were late. [*Id.*] Hickman advised Plaintiff to withdraw after eight weeks rather than fail the class, but Plaintiff declined to do so. [*Id.*] Next, Plaintiff claims that he was forced to take the class again and that Barkley intentionally placed Plaintiff back in Hickman's section, rather than allow him to be assigned to a different professor. [*Id.* ¶ 2.] Third, Plaintiff contends that he has filed two formal complaints against Barkley and Hickman because they were "intentionally acting against my desire to attain my PhD because of my race and position I am in to accomplish that goal." [*Id.* ¶ 3.] Fourth, Plaintiff alleges that Walden failed to train and educate him. [*Id.* ¶ 4.] Finally, Plaintiff claims that Walden "fraudulently misappropriated" money from the United States Department of Education. [*Id.* ¶ 5.]

2

## APPLICABLE LAW

**Liberal Construction of Pro Se Pleadings**

Plaintiff brings this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* complaint may still be subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Motion to Dismiss Standards**

### *Rule 12(b)(2)*

Defendants Barkley and Hickman allege that this Court lacks personal jurisdiction over them. *See* Fed. R. Civ. P. 12(b)(2). Personal jurisdiction in federal courts is typically determined by whether the defendant would be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).[1] In determining whether South Carolina state law would authorize

---

[1] When a claim arises under federal law, personal jurisdiction can be established by serving a summons on the defendant if the defendant is "not subject to jurisdiction in *any* state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2)(A) (emphasis added). This is not the case here—Defendants do not

3

personal jurisdiction over these defendants, the Court properly examines both the state long arm statute and the due process requirements of the Fourteenth Amendment. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

South Carolina's long arm statute provides

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
 (1) transacting any business in this State;
 (2) contracting to supply services or things in the State;
 (3) commission of a tortious act in whole or in part in this State;
 (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
 (5) having an interest in, using, or possessing real property in this State;
 (6) contracting to insure any person, property, or risk located within this State at the time of contracting;
 (7) entry into a contract to be performed in whole or in part by either party in this State; or
 (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803 (2005).  "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Grp.*, 126 F.3d at 623.  Therefore, the appropriate question for the Court in considering a personal jurisdiction defense raised by an out-of-state defendant is whether that defendant has "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).

---

allege they are not subject to jurisdiction in any state, just that they do not have sufficient contacts with South Carolina.

4

Personal jurisdiction may arise through specific jurisdiction, based on the conduct alleged in the suit, or through general jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). To determine whether specific jurisdiction exists, courts should examine "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* at 712. If the defendant's contacts are not the basis of the suit, then jurisdiction must come from "more persistent," unrelated contacts with the state; the defendant's activities within the state must have been "continuous and systematic." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 9 (1984)). In the context of the Internet, the Fourth Circuit has articulated that a state may exercise jurisdiction over an out-of-state defendant using the Internet when that defendant

> (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received.

*Id.* at 714. Plaintiff has the burden of proving that this Court has personal jurisdiction over the Defendants. *See In re Celotex Corp.,* 124 F.3d 619, 628 (4th Cir. 1997). If a court does not hold an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). In considering whether a plaintiff has met this burden, the Court draws all reasonable inferences arising from the proof in a plaintiff's favor and resolves all

5

factual disputes to the benefit of the plaintiff. *Id.* Both sides may present proof on the issue. *See id.*

### Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

6

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes

it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

**Defendants Barkley and Hickman**

Barkley and Hickman argue that this Court does not have personal jurisdiction over them. The Court agrees. Plaintiff makes no allegations in his Complaint that the events giving rise to this suit occurred in South Carolina. In fact, the only reference to location in Plaintiff's Complaint is his residency program in Atlanta, Georgia. [Doc. 1.] Plaintiff does not allege that Hickman and Barkley had any systematic contacts with South Carolina; indeed, he does not allege that they had any contact with the state at all. Moreover, he does not allege how and when his contact with these two individual Defendants took place.

Moreover, Barkley's affidavit demonstrates that he does not have minimum contacts with South Carolina. He resides in Nashville, Tennessee, and works from his home office there. [Doc. 39-2 at 3]. He has never lived in South Carolina, does not own real estate in South Carolina, does not pay taxes in South Carolina and does not have an office, registered agent, voter registration or bank accounts in South Carolina. [*Id.*] Plaintiff does not allege, and Barkley affirmatively refutes, that the two were parties to any contracts (or that Barkley had contracts with any other individual or entity in South Carolina). [*Id.*] Barkley avers that he has not visited South Carolina for the past four or five years. [*Id.*] Barkley met Plaintiff face-to-face on one occasion, in Atlanta, but otherwise his interactions with Plaintiff were over the Internet or by phone. [*Id.* at 4.]

Likewise, Hickman resides in Scottsdale, Arizona, where he works from his home office. [Doc 39-3 at 3]. He was stationed at Fort Jackson in South Carolina while in the United States military in 1983 but has not returned to the state since that time. [*Id.*] He does not own real estate in South Carolina, does not pay taxes in South Carolina and does not have an office, registered agent, voter registration or bank accounts in South Carolina. [*Id.*] He does not have contracts with any people or businesses in South Carolina. [*Id.*] Hickman never met Plaintiff face-to-face; all of their interactions were over the Internet or by phone. [*Id.*] Plaintiff has not put forth any proof to refute Barkley or Hickman's affidavits.

Based on the foregoing, the Court cannot conclude that it has either general or specific jurisdiction over these Defendants. Their contacts with the state of South Carolina do not rise to the level of "continuous and systematic" as required for general jurisdiction. Nor can the Court find that specific jurisdiction exists. Plaintiff fails to allege any activities that occurred within South Carolina. To the extent that Plaintiff's Complaint can be read to allege that the discrimination occurred over the Internet, there is no evidence that Hickman and Barkley manifested any intent to direct their communications toward the state for the purpose of doing business or that such actions would create a cognizable cause of action under South Carolina state law. As the Fourth Circuit noted, "[u]nder this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received," *ALS Scan, Inc.*, 293 F.3d at 714, and Plaintiff's Complaint alleges nothing more than such placement. Therefore, the undersigned recommends that the Complaint against Barkley and Hickman be

9

dismissed for lack of personal jurisdiction. Thus, the Court need not consider whether Plaintiff states a cognizable claim against Barkley and Hickman pursuant to Federal Rule of Civil Procedure 8.

**Defendant Regan**

In viewing the Plaintiff's allegations as true, the Court concludes that the Complaint fails to state a cause of action against Regan. The sum of the allegations in Plaintiff's Complaint against Regan is that she did not grade his assignments or report on his progress in a time effective way. [Doc. 1.] Plaintiff does not allege that this is because of any racial or age bias on Regan's part.[2] [*See id.*] Moreover, Plaintiff acknowledges that the assignments he submitted to Regan were approved for credit toward his degree and does not allege that any injury arose out of the delay. [*See id.*] Therefore, the undersigned recommends that the claim against Regan be dismissed for failure to state a claim upon which relief can be granted.

**Defendant Walden**

Upon consideration of Plaintiff's Complaint, the Court finds that Plaintiff does not assert any jurisdictional or other statutory bases for his claims against Walden. Therefore, Walden has no notice of what law or statute Plaintiff contends it violated.[3] While Walden speculates as to the statutes that may be applicable, these considerations are just that—speculation. Moreover, even if Plaintiff did articulate a specific statutory basis for his claims, the facts as alleged in the Complaint are

---

[2] The undersigned notes that Plaintiff has not delineated what, if any, statute he relies upon in making his discrimination claims.

[3] Walden articulates some inapplicable statutes. For instance, Plaintiff cannot state a claim under Title VII or the Age Discrimination in Employment Act because Plaintiff does not allege that Walden ever employed him. [Doc. 38-1 at 7]; *see also Samour v. Med. Univ. of S.C. Health Prof'ls.*, Civil Action No. 2:09-cv-2788-CWH-BM, 2010 WL 2773052, at *2, (D.S.C. June 22, 2010), *report and recommendation adopted by* 2010 WL 2773073 (D.S.C. July 13, 2010).

10

insufficient to state a cause of action. Plaintiff makes no allegation that he was treated differently from other students because of his age or race. He offers no particularized facts to demonstrate that Barkley and Hickman "conspired" against him. He puts forth no facts that the two were "intentionally acting against" Plaintiff's desire to attain his PhD because of his race. As Walden points out, Plaintiff's allegations against the individual Defendants, arguably Walden's agents, amount to Regan taking too long to grade his assignments, Plaintiff failing Hickman's class for turning in assignments late due to his lack of understanding Walden's technology for submitting assignments, and Plaintiff being reassigned to Hickman's section. Such allegations are not sufficient to state a cause of action, particularly without a specific statutory scheme to support Plaintiff's claims.

Plaintiff also alleges that Walden failed to properly train or educate him. It is unclear whether this is an allegation made in support of Plaintiff's race and age discrimination claims or is meant to state a different cause of action. Again, Plaintiff has provided no statute or other legal basis for this claim. According, that the facts as alleged in this claim do not suffice to state a claim for discrimination—or any other claim.

Finally, Plaintiff alleges that Walden fraudulently misappropriated United States Department of Education funding for its own benefit. Again, Plaintiff does not identify a statutory basis for his claim. Moreover, Plaintiff alleges no specific facts to support this claim, let alone facts that would suffice to support a fraud claim under Federal Rule of Civil Procedure 9. Walden speculates that the only possible basis for asserting such a claim would be through a qui tam action on behalf of the United States. As Walden

correctly points out, pro se litigants may not undertake qui tam actions. *United States ex re. Brooks v. Lockheed Martin Corp.*, 237 Fed. App'x 802, 803 (4th Cir. 2007). Therefore, this cause of action fails and the Court concludes that Plaintiff has failed to state a cause of action against Walden.

## CONCLUSION

Wherefore, based upon the foregoing, the undersigned recommends that Defendants' motions to dismiss [Docs. 38, 39] be GRANTED and that the Complaint be dismissed.

IT IS SO RECOMMENDED.

                                        s/Jacquelyn D. Austin
                                        United States Magistrate Judge

September 4, 2013
Greenville, South Carolina